IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARGARITA AVILES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-01409-BF |
| | § | |
| RUSSELL STOVER CANDIES, INC., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court for decision is Defendant Russell Stover Candies, Inc.'s ("Defendant") Motion to Dismiss or, Alternatively, to Stay Pending Arbitration (doc. 11, "Motion to Dismiss"), filed on July 4, 2012. After being granted an extension of time, Plaintiff Margarita Aviles ("Plaintiff") filed her response on August 15, 2012. Defendant filed its reply on August 28, 2012. In the Motion to Dismiss, Defendant is requesting this Court to dismiss without prejudice Plaintiffs' claims or, in the alternative, to stay her claims pending the completion of arbitration. For the following reasons, the Court **GRANTS** the Motion to Dismiss and dismisses Plaintiff's claims against Defendant without prejudice.

### Background

Plaintiff originally filed this lawsuit in the 13th Judicial District Court of Navarro County, TX. (Def.'s Notice of Removal 1.) Defendant removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. (*Id.*) In her Original Petition ("Petition"), Plaintiff alleges negligence and negligence *per se* against Defendant due to an injury Plaintiff incurred in the course and scope of her employment with Defendant. (Pl.'s Pet. ¶¶ 5.1-5.3, 6.1.) Specifically, Plaintiff claims that on June 16, 2010, one of Defendant's supervisors told her to operate a machine which makes the chocolate pieces of candy. (*Id.* ¶ 4.1.) Plaintiff alleges that she had never operated this machine before and had no experience operating it. (*Id.*) Plaintiff claims that when she removed a piece of paper from the machine, the blade of

the machine cut her hand and severely injured her. (*Id.*)

## Undisputed Facts[1]

At all relevant times, Defendant has been a "nonsubscriber" to the optional Texas Workers' Compensation Act. Instead, Defendant voluntarily established the Russell Stover Candies, Inc. Texas Employee Injury Benefit Plan (the "Plan") under the Employee Retirement Income Security Act of 1974 ("ERISA") to provide medical, wage-replacement and death benefits to its Texas employees injured or killed in the course and scope of their employment with Russell Stover.

From 1998 to June 17, 2001, if Defendant's Texas employees wanted to participate in the Plan and be eligible for its benefits in the event of an occupational injury, they needed to accept the terms of the Waiver and Arbitration Agreement ("Agreement"). Employees who wanted to participate in the Plan and be eligible for the Plan's benefits in the event of an occupational injury were given the option to agree to or to reject the terms of the Agreement. Employees who accepted the terms of the Agreement were eligible, in the event of an on-the-job injury, for the Plan's benefits. Employees who rejected the terms of the Agreement were not eligible for Plan benefits in the event of an on-the-job injury.

The Agreement is an arbitration agreement, whereby both Defendant and any employee who has elected to accept the terms of the Agreement agree to pursue any claims and remedies they may have against one another in arbitration before the American Arbitration Association rather than in a judicial forum. The Agreement expressly states that an employee who accepts it acknowledges and understands that by doing so he or she gives up the right to a jury trial on the claims covered by the Agreement. The Agreement, in pertinent part, states:

---

[1] These facts were taken from Defendant's Brief in Support of its Motion to Dismiss, which is designated as ("Def.'s Br."). Plaintiff did not dispute these facts in her Response to Defendant's Motion to Dismiss, designated as ("Pl.'s Br.").

> MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION: Besides on-the-job injuries, I recognize that other differences may arise between the Company (or one of its affiliates, including those listed above) and me during or following my employment with the Company. I understand and agree that any and all such differences (including any on-the-job injury claims not validly released and waived by the preceding paragraph) that cannot first be resolved through mediation must be submitted to binding arbitration. This promise to resolve claims by arbitration is mutually binding upon both me and the Company (and its affiliates, including those listed above). **I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement** (including on any on-the-job injury claims not validly released and waived by the preceding paragraph) in exchange for eligibility for the Plan's medical, disability and death benefits and in anticipation of gaining the benefits of a speedy, impartial, mutually-binding dispute resolution procedure. Both the Company and I agree that this Agreement binds and benefits our successors, subsidiaries, affiliates (including those listed above), assigns, beneficiaries, heirs, children, spouses, parents and legal representatives.

(Def.'s Br. App. 27.) The Agreement also contains a clause allowing an employee who accepted its terms to revoke his or her acceptance within five days after signing it. The Agreement is optional and agreeing to its terms is not a condition of employment with Defendant.

On October 11, 1999, Plaintiff signed the Agreement and specifically elected to be bound by its terms. Plaintiff never revoked her acceptance of the Agreement. Because Plaintiff had agreed to the terms of the Agreement and did not revoke it, the Plan, in reliance on her acceptance of the Agreement, paid medical benefits on her behalf to medical providers for treatment to her in connection with her June 16, 2010 occupational injury, and disability benefits directly to her. The Plan has paid medical benefits of at least $70,525.30 to Plaintiff's medical providers in connection with her June 16, 2010 occupational injury at Russell Stover.

## Defendant's Objection

In its reply brief, Defendant objects to the submission of the Affidavit of Eric H. Marye, Plaintiff's counsel. (Def.'s Reply Br. 1.) Defendant objects to the Affidavit because two of the statements made by Mr. Marye in the Affidavit are not based on his personal knowledge. (*Id.*); *see* FED. R. CIV. P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence ..."). The Court agrees that Mr. Marye does not have personal knowledge that Plaintiff "does not speak English" or "would not have understood the contents of the documents as she does not speak English unless the documents were translated from Spanish to English." (Pl.'s Br. App., Aff. Marye 023.) Thus, this Court SUSTAINS the objection and will not consider the Affidavit of Eric H. Marye in deciding this Motion to Dismiss.[2]

## Standard of Review

The Federal Arbitration Act ("FAA") was enacted to ensure judicial enforcement of arbitration agreements, since arbitration is fundamentally a matter of contract. *Rent–A–Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). The FAA "provides that pre-dispute arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Carter v. Countrywide Credit Indus.*, 362 F.3d 294, 297 (5th Cir. 2004) (quoting 9 U.S.C. § 2).

---

2  The Court notes that to the extent Mr. Marye argues in his Affidavit that Plaintiff did not understand the Agreement because she does not speak English, such contention nonetheless fails. Even assuming, *arguendo,* that Plaintiff does not speak English, she may still be able to read English. Moreover, in Texas, illiteracy will not relieve a party of the consequences of a contract. *See Vera v. N. Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App. 1998) (citation omitted). "Therefore, if a party is unable to read the contract, he must have it read to him." *Id.*

4

The Supreme Court has observed that "[t]he FAA thereby places arbitration agreements on an equal footing with other contracts ... and requires courts to enforce them according to their terms." *Rent–A–Center*, 130 S.Ct. at 2776. Under the FAA, a district court cannot exercise discretion as to the enforcement of arbitration agreements because the FAA mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Nevertheless, arbitration agreements, "[l]ike other contracts ... may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center*, 130 S.Ct at 2776 (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

There is a strong federal policy in favor of enforcing arbitration agreements. *Dean Witter Reynolds*, 470 U.S. at 217; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). When a motion to compel arbitration is made, the FAA requires district courts to compel arbitration of those arbitrable claims. *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 (5th Cir.1985). Because of the strong presumption in favor of arbitration, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter*, 362 F.3d at 297.

When deciding a motion to compel arbitration, courts should undertake a two-step inquiry. *Washington Mut. Finance Group v. Bailey*, 364 F.3d 260, 263 (5th Cir.2004). The first step necessarily requires a finding by the Court that the parties agreed to arbitrate the dispute at issue. *Id.* The next step involves the determination of whether any federal statute or policy renders the claims nonarbitrable. *Id.*

The first inquiry requires two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir.1996). While state law governs the

5

first consideration, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id.* at 258.

In ruling on a motion to compel arbitration, courts can look at the parties' affidavits, pleadings, discovery, and stipulations. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 875 (Tex. App. 2005) (quoting *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992)). A motion to compel arbitration should be treated as a motion for partial summary judgment, and thus the same evidentiary standards apply. *Id.* (quoting *In re Jebbia,* 26 S.W.3d 753, 756–57 (Tex.App.– Houston [14th Dist.] 2000, orig. proceeding)).

## Analysis

On October 11, 1999, Plaintiff and Defendant entered into the Agreement, which stated that they would resolve their claims, if necessary, by binding arbitration. It does not appear that Plaintiff argues that any federal statute or policy renders her claims nonarbitrable. Thus, the sole issue in this matter is whether the parties agreed to arbitrate the dispute at issue. *See Washington Mut. Finance,* 364 F.3d at 263. Resolution of this issue is two-fold, as Plaintiff contends that the Agreement is illusory and thus not a valid contract, and that her claims do not fall within the scope of the Agreement.

**Whether there is a valid agreement to arbitrate between the parties**

Courts must apply state contract law when analyzing whether a valid contract exists between the parties to arbitrate their claims. *Webb,* 89 F.3d at 258. In Texas, contracts must be supported by consideration. *In re Palm Harbor Homes, Inc.,* 195 S.W.3d 672, 676 (Tex. 2006); *see In re AdvancePCS Health L.P.,* 172 S.W.3d 603, 607 (Tex. 2005) (per curiam); *In re Halliburton Co.,* 80 S.W.3d 566, 569–70 (Tex. 2002). Bilateral promises to arbitrate may constitute consideration in arbitration agreements. *In re Palm Harbor,* 195 S.W.3d at 676; *In re AdvancePCS,* 172 S.W.3d at 607. Additionally, "when an arbitration clause is part of a larger, underlying contract, the remainder of the contract may suffice as

6

consideration for the arbitration clause." *In re Palm Harbor,* 195 S.W.3d at 676 (citations omitted).

Plaintiff contends that the Agreement lacks consideration and is illusory because Defendant retained the unilateral right to modify or terminate the Agreement. (Pl.'s Br. 4-7.) Texas courts have recognized that an arbitration agreement may be illusory if one party can unilaterally avoid the agreement to arbitrate. *See In re Palm Harbor,* 195 S.W.3d at 677; *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 230 n.2 (Tex.2003). The Fifth Circuit recently explained that in determining whether one party can unilaterally avoid the arbitration provision, courts should look at whether that party has the ability to make changes which would have a retroactive effect on the arbitration policy. *See Carey v. 24 Hour Fitness, USA, Inc.,* 669 F.3d 202, 205 (5th Cir. 2012); *see also Torres v. S.G.E. Mgmt., LLC,* 397 Fed.Appx. 63, 68 (5th Cir.2010) (unpublished) (encapsulating several Texas and Fifth Circuit cases as "suggest[ing] that the lack of a notice window before any elimination of the [arbitration] clause becomes effective and the ability to amend the agreement retroactively so as to avoid any promise to arbitrate are factors indicating that the agreement may be illusory").

Here, the provision granting Defendant the power to modify or terminate the Plan reads:

> The Company presently intends to continue the Plan indefinitely, but the Company may amend, modify or terminate the Plan at any time. Any such amendment or termination will be approved pursuant to formal written action by the Company *and would not reduce any Plan benefit then due a Participant (or Death Beneficiary or Participant's estate) on account of an injury or death that occurred before the amendment or termination.*

(Def.'s Br. App. 21) (emphasis added). Thus, the provision does not apply retroactively and is not illusory. *See Carey,* 669 F.3d at 205; *In re Odyssey Healthcare, Inc.,* 310 S.W.3d 419, 421, 424 (Tex.2010) (holding that an arbitration provision, which allowed the employer to "amend, modify, or terminate the Plan at any time" was not illusory because it also provided that "no such amendment or termination will alter the

arbitration provisions . . . with respect to . . . an Injury occurring prior to the date of such amendment or termination"). Furthermore, the Court points out that the arbitration agreement, itself, has a separate clause which states that the Agreement "can only be revoked or modified by mutual consent evidenced by a writing" signed by both parties. (Def.'s Br. App. 28-29.) Additionally, Plaintiff, not Defendant, had an opportunity to revoke her acceptance of the Agreement within five days after signing it. (*See id.* at 29.)

Defendant, just like Plaintiff, signed the Agreement promising to resolve its claims by arbitration. Because the promises to arbitrate were mutual, the Court finds that consideration does exist. *See In re Palm Harbor,* 195 S.W.3d at 676. Thus, the agreement to arbitrate between Plaintiff and Defendant is valid.[3]

**Whether the dispute in question falls within the scope of the arbitration agreement**

Plaintiff contends that her negligence and negligence *per se* claims for her on-the-job injury are not claims subject to arbitration under the Agreement. (Pl.'s Br. 1-3.) Plaintiff argues that the following language in the Agreement excludes claims for personal injury, and then somehow includes them:

> MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION: Besides on-the-job injuries, I recognize that other differences may arise between the Company (or one of its affiliates, including those listed above) and me during or following my employment with the Company. I understand and agree that any and all such differences (including any on-the-job injury claims not validly released and waived by the preceding paragraph) that cannot first be resolved through mediation must be submitted to binding arbitration.

(Def.'s Br. App. 27.) It appears that Plaintiff is surmising that the language "besides on-the-job injuries" excludes personal injuries, such as Plaintiff's, however, the Court interprets the language to mean "in addition to on-the-job injuries". Plaintiff argues that the language is ambiguous, but the Court finds nothing

---

[3] The Court notes that Plaintiff ratified the arbitration agreement when she accepted and retained thousands of dollars in medical benefits under the Plan. *See In re Big 8 Food Stores,* 166 S.W.3d at 878. Thus, she cannot now claim that the arbitration agreement is not a valid contract.

ambiguous about the language. The arbitration provision very clearly provides that all current and future disputes, including any personal injury claims that are not validly released and waived, must be arbitrated. Plaintiff does not claim that she released and waived her on-the-job injury claim. Accordingly, this Court finds that Plaintiff's negligence and negligence *per se* claims for her personal injury fall squarely within the arbitration provision.

In sum, the Court finds that Plaintiff and Defendant agreed to arbitrate the dispute at issue. Furthermore, Plaintiff does not contend, and the Court has not found, any federal statute or policy which would render the claims nonarbitrable. Thus, the Court compels arbitration between the parties.

**Whether dismissal or stay of Plaintiff's claims is appropriate**

Considering the Court has found that arbitration must be compelled, the Court must now determine whether to stay the claims pending the outcome of arbitration or to dismiss the claims without prejudice. Plaintiff makes no argument as to the former or the latter. Section 3 of the FAA "provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citing 9 U.S.C. § 3). However, in the proper circumstances, courts may also dismiss a case in favor of arbitration. *Id.* "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Id.* (citations omitted).

Courts in the Fifth Circuit interpreting the *Alford* case have found dismissal appropriate over a stay when *all* of the issues regarding *all* of the parties are arbitrable. *See Jureczki v. Banc One Texas, N.A.*, 252 F.Supp.2d 368, 380 (S.D. Tex. 2003), *aff'd sub nom. Jureczki v. Bank One Texas, N.A.*, 75 F. App'x 272 (5th Cir. 2003) (holding that "[b]ecause there are no live controversies remaining in this action, the court concludes that it should dismiss plaintiffs' claims without prejudice"); *Armstrong v. Associates Int'l*

*Holdings Corp.*, 242 F. App'x 955, 959 (5th Cir. 2007) (explaining that "the Fifth Circuit encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose"); *Bank One, Louisiana, N.A. v. Cameron*, No. 01-0267, 2001 WL 1287118, at *4 (E.D. La. Oct. 22, 2001) (holding dismissal warranted in the case "because the entire matter is encompassed by the arbitration clause"); *Sea-Land Serv., Inc. v. Sea-Land of Puerto Rico, Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986) ("[g]iven our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose"). Because both of Plaintiff's claims pertain to her on-the-job injury, which is encompassed by the arbitration provision, no live controversies remain in the action. Thus, staying the case would serve no purpose. The Court deems that dismissing Plaintiffs' claims without prejudice is appropriate.

## Conclusion

For the foregoing reasons, the Court GRANTS the Motion to Dismiss (doc. 11). It is, hereby, ORDERED that Plaintiff and Defendant shall submit their dispute to arbitration as agreed upon in the Agreement signed by both parties. It is, further, ORDERED that Plaintiff's claims against Defendant shall be dismissed WITHOUT PREJUDICE. Additionally, because the Court now lacks jurisdiction, Plaintiff's Motion to Compel Discovery (doc. 19) and Motion to Compel Inspection (doc. 20) are DENIED as MOOT.

SO ORDERED, November 13, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE